CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

April 02, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **KENNETH E. SELVAGE,** | ) | **Case No. 7:24-cv-00676** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **ISRAEL HAMILTON et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff Kenneth E. Selvage, a Virginia inmate acting *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging federal constitutional claims arising from disciplinary proceedings conducted while he was incarcerated at Keen Mountain Correctional Center. Dkt. 1. Defendants Israel Hamilton, Thomas Meyer, M. Blankenship, D.K. Nichols, and M.E. Cordle filed a Partial Motion to Dismiss for failure to state a claim. Dkt. 23. For the reasons below, the motion is **GRANTED in part** and **DENIED in part**.

## I.      Standard of Review

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[C]ourts are obligated to liberally construe *pro se* complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017) (citation modified)

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## II.    Facts

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, courts in the Fourth Circuit frequently consider facts alleged by *pro se* plaintiffs even if they are improperly alleged outside of the complaint.[1] *See, e.g.*, *Garrett v. Elko*, No. 95–7939, 1997 WL 457667, at *1 (4th Cir. 1997) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1149–51 (4th Cir. 1978)); *see also Smith v. Blackledge*, 451 F.2d 1201, 1202 (4th Cir. 1971) (noting that "claims . . . set out in a 36-page, handwritten document . . .  denominated as one to 'Further Particularize' the complaint [and] regarded by the District Judge as merely a response to defendants' motion to dismiss . . . should have been considered an amendment to the complaint"). In this vein, I consider the original complaint,

---

[1] Fed. R. Civ. P. 12(d) provides that, if matters outside the pleadings are presented to the Court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56. That is distinct from the approach taken here, which is a liberal construction of pro se civil rights allegations.

along with Selvage's response, [2] collectively as "the Complaint." Selvage alleges the following facts giving rise to his claims.

On November 3, 2023, random drug tests were conducted at Selvage's housing unit at Keen Mountain Correctional Center. Dkt. 1. An unidentified correctional officer administered a urine analysis to Selvage, and Selvage tested negative. *Id.* The correctional officer separated the positive tests from the negative tests between two tables, but none of the tests were labeled. *Id.*

Later that evening, Selvage was served a Disciplinary Offense Report for being "under the influence of unprescribed drugs," classified by Keen Mountain as offense code 122(c). *Id.* Defendant M. Blankenship reported that Selvage tested positive for buprenorphine/naloxone, which is a medicine used to treat opioid addiction. *Id.*; Dkt. 29. However, Blankenship did not state who administered the drug test or list the correctional officer who administered the test as a witness on the Disciplinary Offense Report, which Selvage alleges policy requires. Dkt. 1. Defendant D.K. Nichols, the Officer-In-Charge of the Disciplinary Offense Report, knew of this deficiency but still processed the report. *Id.*

On November 6, 2023, Selvage's housing unit was on lockdown, suspending his access to the mailbox. *Id.* At approximately 1:00 p.m., Selvage gave a witness request form and production of evidence form to Blankenship to place in the mailbox for processing by the hearing officer, Defendant M.E. Cordle. *Id.* Selvage then completed another copy of these forms and gave them to Lieutenant Rose at approximately 4:30 p.m. *Id.* Both officers assured Selvage they would place his forms in Cordle's mailbox. *Id.*

---

[2] Selvage submitted a "Brief / Memorandum" and a "Response" in Opposition to the partial motion to dismiss. Dkts. 29–30. These documents appear to be identical, and I will cite to Dkt. 29 in this Opinion for consistency.

Selvage's disciplinary hearing was held on November 14, 2023. *Id.* Cordle stated he never received any of Selvage's requests for testimony or evidence. *Id.* Additionally, during the hearing, Blankenship admitted he did not administer the urine analysis and did not know whether Selvage passed or failed the test. *Id.* Nonetheless, Cordle found Selvage guilty based solely on Blankenship's testimony. *Id.* Cordle then certified his own decision as the institutional reviewer. *Id.*

As a result of Cordle's finding, Selvage was subjected to the following penalties: loss of in-person visits for two years, loss of video visits for two years, loss of telephone privileges for two years, loss of earned sentencing credit/good time, increased security level from Level 3 to Level 4, and a $25 fine. *Id.*

Selvage alleges that, in determining his punishment, Cordle erroneously applied an Enhanced Penalty Sanction. *Id.* According to Selvage, the Discipline Procedure Receipt made available to inmates on September 1, 2023 stated that the Enhanced Penalty Sanction for a prisoner's first conviction of a 122(c) offense was loss of visits for six months. *Id.*; Dkt. 29. However, along with his decision, Cordle attached an October 1, 2023, memorandum stating that prisoners convicted of drug-related offenses would lose all phone and visitation privileges for a period of no less than one year and up to two years for a first conviction. Dkt. 1. Selvage alleges that he and other inmates were unaware of this memorandum, which conflicted with the policy they received one month earlier. *Id.* Selvage also alleges that Cordle abused his discretion in applying the Enhanced Penalty Sanction, as the language of his disposition suggests that the two-year loss was mandatory rather than discretionary within the one-to-two-year range. *Id.*

Selvage appealed his conviction to Defendant Israel Hamilton, the warden of Keen Mountain, on November 28, 2023. *Id.* On December 7, 2023, Hamilton upheld Selvage's

conviction, finding no due process violations and no procedural error. *Id.* Around December 20, 2023, Selvage appealed to Defendant Thomas Meyer, the Regional Administrator for the Virginia Department of Corrections. *Id.* On February 27, 2024, Meyer likewise upheld Selvage's conviction and further found there was no due process issue with Cordle acting as both the hearing officer and institutional reviewer. *Id.* Meyer's decision finalized any further avenues of appeals and attempts for administrative reliefs. *Id.*

Selvage brings claims for: (1) violation of freedom of association under the First Amendment against Cordle, Hamilton, and Meyer; (2) cruel and unusual punishment under the Eighth Amendment against Cordle, Hamilton, and Meyer; and (3) violation of due process under the Fourteenth Amendment against Blankenship, Nichols, Cordle, Hamilton, and Meyer. *Id.* He seeks declaratory judgment; injunctive relief, including expungement of the 122(c) offense, reinstatement of visitation and telephone privileges, restoration of good time credits, correction of security level, and reimbursement of the fine; and $200,000 in compensatory damages against each Defendant and $500,000 in punitive damages against each Defendant. *Id.*

Defendants now move to dismiss: (1) the First Amendment claim against Cordle, Hamilton, and Meyer; (2) the Eighth Amendment claim against Cordle, Hamilton, and Meyer; and (3) the due process claims against Blankenship and Nichols. Dkt. 23. They also move to dismiss Selvage's request for restoration of good time credit; any request for monetary damages associated with Selvage's due process claims; and any request for monetary damages against Defendants in their official capacities. *Id.*

III.    **Analysis**

   a.  **First Amendment Free Speech & Freedom of Association**

5

Selvage first alleges that the two-year loss of visitation and telephone privileges violated his First Amendment rights to free speech and freedom of association. For purposes of analyzing this claim, I assume the validity of Selvage's disciplinary conviction and assess whether the restriction itself is reasonably related to legitimate penological interests. To the extent Selvage argues that the restriction violates the First Amendment because the underlying conviction was constitutionally defective, that argument is more properly analyzed under his due process claims.

### 1. First Amendment Analysis

Prison regulations that restrict visitation and telephone access are evaluated under the deferential standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, a prison restriction that impinges on inmates' First Amendment rights is valid if it is "reasonably related to legitimate penological interests." *Id.* at 89; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Courts apply four factors to determine reasonableness: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest; (2) whether there are alternative means for inmates to exercise the right; (3) the impact accommodation of the right would have on guards, other inmates, and prison resources; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–90 (citations omitted).

The plaintiff bears the burden of disproving the validity of prison regulations. *Overton*, 539 U.S. at 132 (citations omitted). At the motion-to-dismiss stage, the question is whether the complaint plausibly alleges that the challenged restriction lacks a rational connection to legitimate penological interests. *Ford v. Northam*, No. 7:22-CV-00122, 2023 WL 2767780, at *13 (W.D. Va. Mar. 31, 2023) (citations omitted), *aff'd,* No. 23-6410, 2023 WL 6057493 (4th Cir. Sept. 18, 2023).

Here, Selvage alleges that the two-year suspension of all visitation and telephone privileges was imposed arbitrarily, without regard to his disciplinary history, and without any individualized determination that such a severe sanction was necessary to advance institutional security or deter future misconduct. These allegations, taken as true, plausibly suggest that the restriction may not be reasonably related to legitimate penological interests or may constitute an "exaggerated response" to Selvage's first drug-related offense. *Turner*, 482 U.S. at 87; *see also Overton*, 539 U.S. at 137 (noting that visitation restrictions may be unconstitutional if they are "applied in an arbitrary manner to a particular inmate").

Defendants argue that the two-year suspension of privileges is constitutional because the Supreme Court in *Overton* upheld a similar regulation that prohibited visitation for inmates with two or more substance-abuse violations for a period of at least two years. But *Overton* did not create a categorical rule that any two-year restriction is permissible. Rather, the Court upheld the restriction in that case based on the specific evidentiary record before it, including the policy's role in a graduated system of discipline and its connection to deterring increased incidences of smuggling and drug and alcohol use. *See id.* at 129–30. At the pleading stage, no such evidentiary record exists in this case.

Selvage also identifies two meaningful distinctions between this case and *Overton*. First, the policy upheld in *Overton* applied to inmates with two or more substance-abuse violations. Here, Selvage alleges he had no prior drug offenses and this was his first disciplinary conviction of that type. Second, the inmates in *Overton* retained telephone privileges and letter-writing privileges, whereas Selvage lost both visitation and telephone privileges, leaving him with only written correspondence as a means of communication. These distinctions support Selvage's

7

allegation that the sanction imposed here is more severe than the one upheld in *Overton* and therefore may require a stronger justification.[3]

Because the *Turner* analysis is fact-intensive and depends on evidence regarding the purpose and operation of the policy, dismissal at this early stage is inappropriate. Defendants remain free to present evidence at summary judgment demonstrating that the sanction imposed on Selvage was reasonably related to legitimate penological interests.

### 2. Qualified Immunity

Although qualified immunity may ultimately bar Selvage's claim for damages, it is premature to resolve that issue at the motion-to-dismiss stage. *Turner* and *Overton* clearly require that restrictions on visitation and telephone access bear a rational relationship to legitimate penological interests and not constitute an exaggerated or arbitrary response. Whether the restriction imposed here satisfies that standard cannot be determined without a factual record.

### b. Eighth Amendment Cruel and Unusual Punishment

Selvage alleges that the penalties imposed—including loss of visitation and telephone privileges, loss of good time credits, increased security level, and a fine—constitute cruel and unusual punishment in violation of the Eighth Amendment.

To establish an Eighth Amendment violation, a plaintiff must satisfy both objective and subjective components. Objectively, the deprivations alleged must be "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), meaning they "must not involve the wanton and

---

[3] Selvage also argues that (1) the two-year restriction was imposed based on an October 2023 memorandum that conflicted with an earlier policy and was not properly distributed to inmates, and (2) the hearing officer failed to exercise discretion by not imposing a loss of privileges for less than two years. These arguments relate to notice and arbitrary decision-making under the Due Process Clause and are better addressed in the context of Selvage's due process claims against Cordle, Hamilton, and Meyer.

unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, the plaintiff must show that prison officials acted with "deliberate indifference to a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks and citations omitted). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

Here, Selvage has not alleged facts showing that the penalties imposed constitute objectively serious deprivations that threaten his health or safety or involve the wanton infliction of pain. The loss of visitation and telephone privileges, while significant, does not rise to the level of an Eighth Amendment violation. In *Overton*, the Supreme Court specifically held that a two-year ban on visitation following substance-abuse violations was "not a dramatic departure from accepted standards for conditions of confinement [and did not] create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." 539 U.S. at 137 (citation modified); *see also Diggs v. Johnson*, No. 7:24-CV-00361, 2024 WL 4681622, at *4 (W.D. Va. Nov. 5, 2024). Similarly, the loss of telephone privileges and good time credits, increased security level, and $25 fine are punitive sanctions authorized by prison regulations and do not constitute cruel and unusual punishment. *See Diggs*, 2024 WL 4681622, at *4 (collecting cases); *Boone v. Cartledge*, No. CA 2:13-1588-JFA-WWD, 2014 WL 3687399, at *6 (D.S.C.

9

July 23, 2014); *Riddick v. Mickles*, No. 7:20-CV-00559, 2023 WL 2759069, at \*5 (W.D. Va. Mar. 31, 2023). Selvage has therefore failed to allege a serious deprivation of a basic human need.[4]

Selvage also has not alleged facts showing that Defendants acted with deliberate indifference to a substantial risk of serious harm. The imposition of authorized disciplinary sanctions following a hearing does not constitute deliberate indifference under the Eighth Amendment. *See Overton*, 539 U.S. at 137 (explaining that withdrawal of privileges does not involve deliberate indifference to the risk of pain or injury) (citations omitted).

Finally, in his response to the motion to dismiss, Selvage argues that narcotics addiction is an illness and that the Enhanced Penalty Sanction specifically targets those with drug addictions because buprenorphine/naloxone is used to treat opiate addiction, thereby punishing those who suffer from a mental illness. While the Supreme Court held in *Robinson v. California*, 370 U.S. 660, 667 (1962), that a state may not criminalize the mere status of being addicted to narcotics, *Robinson* does not prohibit punishment for conduct related to drug use. The Court has distinguished punishing the "status" of addiction from punishing specific acts involving drugs. *See Powell v. Texas*, 392 U.S. 514, 532 (1968) (declining to extend *Robinson* and holding that punishing public intoxication does not violate the Eighth Amendment even when committed by a chronic alcoholic). Here, Selvage was not punished for the status of being an addict; he was

---

[4] Selvage could establish an Eighth Amendment claim by showing that the sanctions "were applied in an arbitrary manner." *Overton*, 539 U.S. at 137. However, the Eighth Amendment imposes only a narrow "gross disproportionality" principle in non-capital cases. *Rummel v. Estelle*, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."). A penalty that falls within an authorized range prescribed by regulation is not grossly disproportionate merely because it is at the higher end of that range. *See United States v. Francois*, 889 F.2d 1341, 1343 (4th Cir. 1989). Prison officials possess broad discretion in determining appropriate penalties for disciplinary infractions within prescribed limits. Here, the choice between one year and two years of lost privileges for a drug-related offense does not rise to the level of gross disproportionality required to establish an Eighth Amendment violation.

punished for testing positive for unprescribed drugs, which constitutes conduct that prison officials have a legitimate interest in preventing and punishing. The Enhanced Penalty Sanction applies to any prisoner convicted of a drug-related offense, regardless of addiction status. Selvage's argument fails to understand the distinction between being punished for the status of addiction and being punished for the act of drug use. The penalties here fall squarely within the latter category.

For the foregoing reasons, Selvage's Eighth Amendment claims are dismissed without prejudice.

### c.  Fourteenth Amendment Due Process

Selvage alleges that Blankenship violated his due process rights by failing to identify the correctional officer who administered the drug test and failing to list that officer as a witness in the Disciplinary Offense Report, as required by prison policy. Selvage then alleges that Nichols, as the Officer-In-Charge, knew that the report did not comply with policy but approved it anyway.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Instead, the Supreme Court in *Wolff* held that when prison disciplinary proceedings may result in the loss of good time credits or other significant liberty interests, due process requires certain minimal procedural protections: (1) advance written notice of the charges, (2) an opportunity to call witnesses and present documentary evidence, and (3) a written statement by the factfinders as to the evidence relied upon and reasons for the disciplinary action. *Id.* at 564–71. However, *Wolff* does not require that a disciplinary report identify by name every potential witness or every officer involved in the underlying incident;

11

rather, it requires only that an inmate receive advance written notice of the charges and an opportunity to call witnesses. 418 U.S. at 564–66. The failure to include a witness's name in the initial disciplinary report, standing alone, does not constitute a due process violation if the inmate is otherwise afforded notice of the charges and an opportunity to request witnesses. *Cf. Turner v. Lane*, No. 88–2589, 1991 WL 222208, at *2 (7th Cir. Oct. 22, 1991) (finding that defendants' failure to name the alleged victim on plaintiff's disciplinary report was not a due process violation).

Here, Selvage received written notice of the charges against him and submitted witness request forms to call the unidentified testing officer. The allegations that Blankenship served a disciplinary report that allegedly violated internal policy, and that Nichols approved that report, do not constitute a due process violation. *See Gregory v. Ward*, No. C.A. 3:02-0044-25BC, 2003 WL 22989024, at *4 (D.S.C. Feb. 25, 2003) (explaining that allegations that defendants did not follow their own policies or procedures do not constitute constitutional violations) (citations omitted), *aff'd*, 69 F. App'x 127 (4th Cir. 2003). Any potential procedural deficiency lies with Cordle not allowing Selvage to call his listed witness at the hearing and is more properly analyzed as part of the overall due process analysis of the hearing itself.

Because the failure to identify a witness in a disciplinary report, without more, does not rise to the level of a constitutional violation, Selvage's Fourteenth Amendment claims against Blankenship and Nichols are dismissed without prejudice.

### d. Restoration of Good Time Credits

Defendants move to dismiss Selvage's request for restoration of good time credits, arguing that the sole remedy for such relief is a petition for writ of habeas corpus under 28 U.S.C. § 2254.

The Supreme Court in *Heck v. Humphrey* held that a state prisoner's claim for damages under § 1983 is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the conviction or sentence has been reversed, expunged, invalidated, or called into question by a writ of habeas corpus. 512 U.S. 477, 486–87 (1994). In *Edwards v. Balisok*, the Court extended *Heck* to prison disciplinary proceedings involving the loss of good time credits, holding that claims for declaratory relief and monetary damages challenging disciplinary proceedings are not cognizable under § 1983 where success would necessarily imply the invalidity of the deprivation of good time credits. 520 U.S. 641, 646–48 (1997); *see also Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Based on Selvage's allegations, the loss of good time credits affected the overall length of his sentence by delaying his eligibility for release. A § 1983 action seeking restoration of good

13

time credits is therefore barred. If Selvage wishes to challenge the loss of good time credits and

seek their restoration, he must do so through a petition for writ of habeas corpus under § 2254.[5]

### e. Monetary Damages Associated with Due Process Claims

Defendants move to dismiss any request for monetary damages associated with Selvage's

due process claims, arguing that *Heck* and *Edwards* bar such claims because success would

necessarily imply the invalidity of the disciplinary conviction.

As discussed, under *Edwards v. Balisok*, claims for monetary damages challenging prison

disciplinary procedures are not cognizable under § 1983 if establishing the constitutional

violation would "necessarily imply the invalidity of the deprivation of . . . good-time credits."

520 U.S. at 646; *see also Pierce v. Freeman*, No. 95-7031, 1997 WL 467533, at *2 (4th Cir. Aug.

15, 1997). Although a plaintiff who suffers a procedural due-process violation may ordinarily

recover nominal damages without proving actual injury, *Carey v. Piphus*, 435 U.S. 247, 266

(1978), that principle does not override *Edwards* when the procedural defect is inseparable from

the validity of the disciplinary conviction itself. *See Amin v. Pruett*, 930 F. Supp. 1121, 1125

(E.D. Va. 1996) (explaining that a plaintiff cannot avoid *Heck* "merely by artful pleading—that

is, by challenging only the sufficiency of process"). So long as the claim "*indirectly* [seeks] a

judicial determination that necessarily implies the unlawfulness of the [duration of the] State's

custody," *Heck* and *Edwards* require the § 1983 cause of action to be dismissed. *Hebrard v.

Nofziger*, 90 F.4th 1000, 1010 (9th Cir. 2024) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81

(2005)). For example, in *Edwards*, the plaintiff alleged he was denied the opportunity to submit

---

[5] It is not clear from the present record whether Selvage's remaining requests for relief would likewise be barred under *Heck* and *Edwards* to the extent those requests relate to the disciplinary conviction. Because the parties have not fully briefed these issues, I decline to address the availability of Selvage's remaining forms of relief at this stage.

witness statements, and the court found that this procedural defect, if established, would "necessarily imply the invalidity of the deprivation of [the plaintiff's] good-time credits." 520 U.S. at 646–47. This case is no different.

Selvage's allegations of procedural violations—including the failure to call the only officer who witnessed the incident and the reliance on testimony from a witness who admitted he had no knowledge of the drug test—directly attack the evidentiary basis of the disciplinary conviction, even if he does not explicitly claim that the conviction was unlawful. If proven, these allegations would necessarily imply that the hearing lacked the minimal evidentiary support required by due process and that the resulting loss of good-time credits was invalid. In other words, the procedural defects Selvage identifies are not collateral to the conviction; they go to the heart of whether the disciplinary finding could lawfully stand.

Because success on these claims would necessarily imply the invalidity of the disciplinary conviction and that conviction has not been overturned or otherwise invalidated, Selvage's § 1983 claim for monetary relief is barred. *See, e.g.*, *Moskos v. Hardee*, 24 F.4th 289, 295–96 (4th Cir. 2022) (dismissing plaintiff's claims under *Edwards* where he alleged that defendants falsified information, causing him to be found guilty of disciplinary offenses he did not commit). Accordingly, Defendants' motion to dismiss is granted as to monetary damages associated with all of Selvage's due process claims.

### f.  Official Capacity Monetary Damages

Defendants move to dismiss any claims for monetary damages brought against them in their official capacities, arguing that they are entitled to Eleventh Amendment immunity.

A suit against a state official in his official capacity is treated as a suit against the state itself, and the Eleventh Amendment bars claims for monetary relief against a state or its agencies

unless the state has waived immunity or Congress has validly abrogated it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Section 1983 does not abrogate the states' Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), nor has Virginia consented to such suits, *Madden v. Virginia*, No. 3:11CV241-HEH, 2011 WL 2559913, at *3 (E.D. Va. June 28, 2011). Accordingly, to the extent Selvage seeks monetary damages against Defendants in their official capacities, those claims must be dismissed.

## IV.    Conclusion

For the reasons stated above, Defendants' Partial Motion to Dismiss (Dkt. 23) is **GRANTED in part** and **DENIED in part**. Selvage's Eighth Amendment claim, and his Fourteenth Amendment claim against Blankenship and Nichols, are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Additionally, Selvage's request for restoration of good time credit, request for monetary damages associated with his due process claims, and request for monetary damages against Defendants in their official capacities are **DISMISSED WITH PREJUDICE**. Selvage's First Amendment claim remains, as does his Fourteenth Amendment claim against Cordle, Hamilton, and Meyer. Selvage may file an Amended Complaint providing factual allegations sufficient to support the alleged constitutional violations within 30 days of the date of this Order.

An appropriate Order accompanies this Memorandum Opinion.

Entered:  April 2, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

16